| | |
|---|---|
| 1 | JOSHUA D. KIENITZ, Bar No. 244903 |
| | jkienitz@littler.com |
| 2 | LITTLER MENDELSON, P.C. |
| | Treat Towers |
| 3 | 1255 Treat Boulevard |
| | Suite 600 |
| 4 | Walnut Creek, California  94597 |
| | Telephone:     925.932.2468 |
| 5 | Fax No.:        925.946.9809 |
| 6 | DOUGLAS L. ROPEL, Bar No. 300486 |
| | dropel@littler.com |
| 7 | LITTLER MENDELSON, P.C. |
| | 500 Capitol Mall |
| 8 | Suite 2000 |
| | Sacramento, California 95814 |
| 9 | Telephone:     916.830.7200 |
| | Fax No.:        916.561.0828 |
| 10 | |
| 11 | HARMAN S. DEOL, Bar No. 346547 |
| | hdeol@littler.com |
| 12 | LITTLER MENDELSON, P.C. |
| | 101 Second Street |
| 13 | Suite 1000 |
| | San Francisco, California  94105 |
| 14 | Telephone:     415.433.1940 |
| | Fax No.:        415.399.8490 |
| 15 | Attorneys for Defendant |
| | PACIFIC GAS & ELECTRIC COMPANY |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GARCIA, on behalf of himself and all others similarly situated, and the general public, | Case No. |
| | (Related Case No. 3:24-cv-04150-VC) |
| Plaintiff, | |
| | **NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT** |
| v. | |
| PACIFIC GAS & ELECTRIC COMPANY, a California Corporation; and DOES 1 through 50, inclusive, | **[28 U.S.C. §§ 1331, 1441, and 1446]** |
| | Complaint Filed: June 4, 2024 |
| Defendants. | FAC Filed: September 26, 2024 |
| | San Francisco Superior Court |
| | Case No. CGC24615226 |

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT

CASE NO.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF JOSE GARCIA:**

**PLEASE TAKE NOTICE** that Defendant PACIFIC GAS AND ELECTRIC COMPANY, ("Defendant" or "PG&E"), contemporaneously with the filing of this Notice, is removing the above-referenced action from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California.

Removal is proper based on Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("Section 301"). This action is removed pursuant to the procedures found in 28 U.S.C. §§ 1441 and 1446, and removal jurisdiction is based on a federal question under 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1446(d), Defendant will also file a copy of this Notice of Removal with the San Francisco Superior Court.

## I.  PROCEDURAL BACKGROUND

On June 10, 2024, Plaintiff Jose Garcia ("Plaintiff") filed the original complaint in the Superior Court of the State of California, County of San Francisco. That complaint contained seven (7) causes of action, alleging: (1.) Failure to Provide Meal Periods (Cal. Lab. Code §§ 204, 223, 226.7, 512 and 1198); (2.) Failure to Provide Rest Periods (Cal. Lab. Code §§ 204, 223, 226.7 and 1198); (3.) Failure to Pay Hourly Wages (Cal. Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1 and 1198); (4.) Failure to Indemnify (Cal. Lab. Code § 2802); (5.) Failure to Provide Accurate Written Wage Statements (Lab. Code §§ 226(a)); (6.) Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 et seq.); (7.) Civil Penalties under the Private Attorney's General Act ("PAGA") (Cal. Lab. Code §§ 2698, et seq.) PG&E removed that action, filed a motion to dismiss, and this Court granted PG&E's motion to dismiss, in part, and then remanded Plaintiff's remaining claims to state court, on September 17, 2024, in *Garcia v. PG&E*, 2024 WL 4209519 (N.D. Cal. Sep. 17, 2024).

The Court dismissed Plaintiff's overtime (Labor Code Section 510), meal period (Labor Code Section 512), wage scale (Labor Code Section 223) and pay timing (Labor Code Section 204), holding that those claims are preempted by Section 301. 2024 WL 4209519, *1. Plaintiff's rest period claim remained because PG&E did not move to dismiss the claim. *Id.* Plaintiff's minimum wage claim remained "because employees cannot waive their right to a minimum wage through a CBA." *Id.* (*citing*

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA
94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT

CASE NO.

*Huerta v. CSI Electrical Contractors,* 15 Cal. 5th 908, 933 (2024)). Plaintiff's expense reimbursement claim remained because, on the record before the Court at the time, "PG&E failed to point to specific language in the CBA that would need to be interpreted to adjudicate this claim." *Id.*

On September 26, 2024, Plaintiff filed and served the operative First Amended Complaint ("FAC"). The FAC included new and preempted overtime and meal period related allegations, despite that Plaintiff's overtime and meal period claims had already been dismissed by this Court. The FAC is attached to the accompanying Declaration of Joshua D. Kienitz ("Kienitz Decl.") as **Exhibit 1**. PG&E's October 9, 2024, Answer to the FAC is attached as **Exhibit 2** to the Kienitz Decl. All other orders and/or papers in the superior court action are attached to Kienitz Decl. as **Exhibit 3**. As of the date of this Notice of Removal, no other parties have been named or served with the FAC, to Defendant's knowledge.

In PG&E's Answer to the FAC, PG&E told Plaintiff exactly what these newly-added – and preempted – allegations were, and invited Plaintiff to dismiss those allegations before this second removal was filed. (Kienitz Decl., Exh. 2.) Plaintiff, however, has maintained all of the newly-added preempted allegations identified on the first page of PG&E's Answer, through and including the date the instant Removal was filed.

## II.   REMOVAL JURISDICTION

This Court has jurisdiction because a federal question exists under Section 301 of the Labor Management Relations Act ("LMRA"), which provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this [Act], or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a) (hereinafter, "Section 301").

As discussed further in Section IV below, Section 301 preemption and jurisdiction apply to the following claims and causes of action in the FAC:

Preempted Overtime Claims: FAC, Paragraph 110(iii), contains an overtime allegation (Labor Code Section 510) that this Court has already held preempted by Section 301.

Preempted Meal Period Claims: FAC, Paragraphs 95, 106, 110 and 110(iii), contain meal

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT    3    CASE NO.

period allegations (Labor Code Section 512 and applicable Wage Order) that this Court has already held preempted by Section 301. Paragraphs 20 and 21 of the FAC contain additional preempted meal period allegations.

<u>Preempted Expense Reimbursement Claims</u>: FAC, Paragraphs 31, 32, 60, 61, 62, 63 and 67-78 (Third Cause of Action), are preempted under Section 301.

<u>Preempted Minimum Wage Claims</u>: FAC, Paragraphs 18 and 49-66 (Second Cause of Action), are preempted under Section 301 because Plaintiff's minimum wage claim is built entirely upon (i) preempted meal break allegations, (ii) preempted expense reimbursement allegations and/or (iii) pre-shift off-the-clock minimum wage allegations that are preempted under *Burnside* Step Two.

## III.   REMOVAL PROCEDURE

### A.   Venue Is Proper in This District

Plaintiff filed this action in the Superior Court of California, County of San Francisco. Therefore, pursuant to 28 U.S.C. §§ 84(a), 1391, and 1441(a), venue properly lies in the United States District Court for the Northern District of California.

### B.   This Removal Is Timely

Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because Defendant filed it within thirty (30) days after the service of the FAC. Service occurred on September 26, 2024. (Kienitz Decl., Para. 2.) This Notice of Removal is timely filed within thirty (30) days thereafter. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48, 354 (1999) (holding removal period is triggered by completed service of process).

### C.   A Second Removal Is Warranted On New Grounds

This removal is PG&E's second. A second removal is permitted where, as here, that removal is based on new or different grounds that did not exist at the time of the filing of the first removal. *Kirkbride v. Continental Cas. Co.*, 933 F.2d 729, 732 (9th Cir. 1991). As stated on the first page of PG&E's Answer, this removal is based on new allegations in the FAC that were not included in the original complaint. Plaintiff refused to dismiss these allegations, despite having more than two weeks within which to do so. Specifically, the newly pleaded allegations that also constitute newly pleaded grounds for this second removal are as follows:

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA
94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT     4     CASE NO.

- FAC, Paragraph 20 (entire paragraph)
- FAC, Paragraph 21 (entire paragraph)
- The following portion of FAC, Paragraph 95: "... failing to comport with their affirmative obligations as an employer to provide nonexempt employees with uninterrupted, duty free meal periods of at least thirty minutes for each work period of five or more hours ..."
- The following portion of FAC, Paragraph 106: "... 512 ..."
- The following portion of FAC, Paragraph 110: "... 512 ..."
- FAC, Paragraph 110(iii): "For violation of Labor Code §§ 510 and 512, fifty dollars ($50) for each employee for each initial pay period for which the employee was underpaid, and one hundred dollars ($100) for each employee for each subsequent pay period for which the employee was underpaid (penalties set by Labor Code § 558)."

**D.     The Parties, the Union, and the Relevant Collective Bargaining Agreements**

PG&E is a company engaged in an industry affecting commerce within the meaning of the National Labor Relations Act (the "NLRA"). 29 U.S.C. §§ 152(2), (6), (7), and 185(a). The International Brotherhood of Electrical Workers, Local 1245 ("IBEW" or the "Union") is a labor organization under the NLRA and LMRA. 29 U.S.C. §§ 152(5) and 185(a). PG&E and IBEW, at all relevant times, have been parties to a collective bargaining agreement ("CBA"). A true and correct copy of the CBA in effect during Plaintiff's employment, and applicable to Plaintiff's employment, along with the agreements to extend the CBA through 2025, are attached to the Ledbetter declaration ("Ledbetter Decl.") as **Exhibits 4-5**. (*See also* Defendant's Request for Judicial Notice ("RJN") at ¶ 1-2.) The applicable CBAs also include subject-specific letter agreement and grievance settlements. (Ledbetter Decl. ¶¶ 6-7 , Exhs. 6-8.)

At all relevant times during his employment with PG&E, Plaintiff was a union–represented employee and part of the bargaining unit represented by the Union and, therefore, subject to the CBA. (Ledbetter Decl. at ¶¶ 2-5.)

**IV.     RELATED CASE UNDER LOCAL RULE 3-12**

Although the FAC is different from the original complaint in various material respects, this

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT     5     CASE NO.

1. action is the same action as in Case No. 3:24-cv-04150-VC, in which the Court issued an order granting, in part, PG&E's motion to dismiss and then remaining the remainder of the then-operative original complaint to state court. *See Garcia, supra,* 2024 WL 4209519, *1.

On the same day that PG&E files this removal, in compliance with Local Rule 7-11(a), PG&E will ask Plaintiff to stipulate that this case is related to Case No. 3:24-cv-04150-VC within the meaning of Local Rule 3-12, such that both cases should be assigned to the same Judge. If such a stipulation is not forthcoming, PG&E will promptly file an administrative motion under Local Rule 3-12(b), seeking to have this case reassigned to Judge Vince Chhabria (unless the initial assignment is to this judge).

## V.     FURTHER DISCUSSION REGARDING SECTION 301 JURISDICTION

### A.     Section 301 Preemption

Section 301 completely preempts all claims that are based on, or require the interpretation of, a collective bargaining agreement. *United Steelworkers of America v. Rawson*, 495 U.S. 362, 368–69 (1990); *Associated Builders & Contractors, Inc. v. Local 302 International Brotherhood of Electrical Workers*, 109 F.3d 1353, 1356–57 (9th Cir. 1997) (Section 301 is construed "quite broadly to cover most state-law actions that require interpretation of labor agreements"). "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement and any state claim whose outcome depends on analysis of the terms of the agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987).

Where a claim is preempted by Section 301, that claim must be dismissed unless the plaintiff both (i) alleges that they first exhausted the contractual grievance and arbitration procedure *before* bringing suit and (ii) alleges, *within a 6-month limitations period*, that the plaintiff's union breached its duty of fair representation in failing to advance or arbitrate a grievance on plaintiff's behalf. *See DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164 (1983); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985-86 (9th Cir. 2007).

As articulated in *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059-60 (9th Cir. 2007), and as refined in *Curtis*, 913 F.3d at 1152, the Ninth Circuit applies a two-step test to determine if a claim is preempted under Section 301.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA
94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT       6       CASE NO.

*Burnside/Curtis* Step One.  Under the Section 301 preemption analysis, courts must first inquire whether the relief requested by a plaintiff "involves a right [that] exists solely as a result of the CBA." *Curtis*, 913 F.3d at 1152.  Where the terms of a collective bargaining agreement meet the requirements of a CBA exemption in the Labor Code or Wage Orders, this eliminates the independent state law claim and only the CBA-created rights remain, and the inquiry is resolved at this first step in favor of preemption.  *See id.* at 1154; *Rodriguez v. Gonsalves & Santucci, Inc.*, 2022 WL 161892, *1, 3-4 (N.D. Cal. Jan. 18, 2022); *Giles v. Canus Corp.,* 2022 WL 3370793, *4-5 (N.D. Cal. Aug. 16, 2022).

*Burnside/Curtis* Step Two.  If, and only if, no Section 301 preemption is found at Step One, courts proceed to the second step of the analysis, which asks "whether a plaintiff's state law right is substantially dependent on analysis of the CBA." *Curtis*, 913 F.3d at 1153.  Under this second step, even where there is no applicable CBA exemption and no CBA waiver is permitted, preemption still applies if the resolution of a plaintiff's claim requires interpretation of the CBA.  *See Mellon v. Universal City Studios, LLC*, 2022, 625 F. Supp. 3d 1007, 1014-16 (C.D. Cal. Sep. 2, 2022) (although not waivable through a CBA, minimum wage claim still preempted by Section 301 under Step Two because adjudicating claim required interpretation of CBA language); *Giles,* 2022 WL 3370793, *6 (minimum wage claim alleging off-the-clock work "perform[ing] duties while on [plaintiff's] meal break" preempted under Step Two because interpretation of CBA language required); *Rodriguez,* 2022 WL 161892, *5 (minimum wage claim preempted under Step Two because interpretation of CBA language required to resolve claim).

*Huerta* and Section 301 Preemption.  The California Supreme Court's decision in *Huerta* did not involve, discuss or mention the Section 301 preemption analysis, Step One or Step Two.  *See* 15 Cal. 5th 908, *passim*.  *Huerta* rejected the defendant's argument that a CBA could waive an employee's right to a minimum wage for all hours worked.  15 Cal. 5th at 932-33.  *Huerta* then held that where: (i) a CBA provides for an unpaid meal period; and (ii) the employer prohibits the employee from leaving the employer's premises or otherwise significantly restricts the employee's movement and freedom during a meal period; then (iii) that time is compensable as "hours worked." *Id.* at 935-38.  *Huerta* is not at all inconsistent with Step Two Section 301 preemption cases like *Mellon*, 625 F.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT

7

CASE NO.

Supp. 3d at 1014-16, which recognize that a CBA cannot waive a minimum wage claim, but then proceed to Step Two of the *Burnside* analysis, which asks whether CBA language must be interpreted to resolve the particular pleaded minimum wage claim at issue (Step Two does not turn on whether a waiver exists or is permitted).

    **B.**    **Plaintiff's Allegations Related To Meal Breaks Are Preempted.**

Because the Labor Code Section 512(e) CBA exemption applies, each and every meal period claim Plaintiff could possibly make is preempted under Section 301 of the Labor Management Relations Act. This is because "his right to meal periods exists solely as a result of his CBA." *Garcia, supra,* 2024 WL 4209519, *1.

    **1.**    **The Meal Period Claims In FAC, Paras. 95, 106, 110 And 110(iii) Are Preempted.**

The following allegations in the FAC are preempted, because they facially allege a violation of Labor Code Section 512 or the substance of the Labor Code or Wage Order meal period rules:

First, the portion of Paragraph 95 of the FAC regarding "... failing to comport with their affirmative obligations as an employer to provide nonexempt employees with uninterrupted, duty free meal periods of at least thirty minutes for each work period of five or more hours[.]"

Second, the reference to Labor Code Section "512" (which governs meal periods) in Paragraphs 106 and 110 of the FAC.

Third, Paragraph 110(ii) of the FAC, which asks for civil penalties for alleged violations of Labor Code Sections 510 (overtime) and 512 (meal period).  *See Garcia*, 2024 WL 4209519, *1 (Plaintiff's overtime and meal period claims both held preempted under Section 301 and dismissed).

    **2.**    **The Meal Period Allegations In Paragraphs 20 And 21 Are Preempted Because Plaintiff's Right To Meal Periods Exists Only Under The CBA And Because CBA Interpretation Is Required To Adjudicate Those Claims.**

Plaintiff's allegations in Paragraphs 20 and 21 of the FAC are also preempted. These allegations are meal period allegations; therefore, they are contractual allegations. Plaintiff's "right to meal periods exists solely as a result of his CBA." *Garcia*, 2024 WL 4209519, *1.

    **a.**    **Plaintiff's Contractual Meal Period Rights**

As a GSR, Plaintiff has a panoply of contractual meal period rights.  While deep knowledge

LITTLER
MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA
94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT     8     CASE NO.

of the meaning of various contractual terms of art, *i.e.*, how this CBA language should be interpreted, is required to know with certainty what Plaintiff's contractual meal period rights mean in practice, PG&E submits that the following discussion is sufficient for the Section 301 preemption analysis.

"In general, and except as otherwise provided herein, the regular hours of work shall be from 8 a.m. to 12 o'clock noon and from 12:30 p.m. to 4:30 p.m., or from 8 a.m. to 12 o'clock noon and from 1 p.m. to 5 p.m." (Ledbetter Decl., Exh. 5 at p. 51; CBA Section 202.4.) In other words, subject to exceptions, the CBA generally provides a 30- or 60-minute meal break starting at Noon.

The exceptions under Section 202.4 include "that the regular lunch period may be advanced or delayed one hour or less for any of the following reasons ... (a) when work which must necessarily be performed on facilities serving a customer of Company can most conveniently be performed during such customer's lunch period; (b) when work must necessarily be performed by reason of an interruption to utility service or other emergency having occurred; (c) when work must necessarily be performed to eliminate a hazard to life or property[.]"  (*Id.*)

In other words, when the regular meal period is interrupted by emergency, a safety issue, service interruption or customer convenience, PG&E has a contractual duty (which itself is subject to an exception, described below) to provide an alternative meal period within an hour of the normal meal period time.  This concept is also covered in Section 104.1 of the CBA: "[t]he intention of the parties in negotiating with respect to meals ... [is] that a comparable substitute shall be provided when employees are prevented from observing their usual and average meal practices or are prevented from eating a meal at approximately the usual time therefore." (Ledbetter Decl., Exh. 5 at p. 23.)

Further, under Section 202.4, if PG&E moves the meal period forward or back more than one hour, in the case of emergency, safety issue, service issue, or customer convenience, then Plaintiff's contractual meal period rights under Section 204.2 include: (1) being paid for the regular meal period at an *overtime* rate; <u>and</u> (2) getting a later (or earlier) paid meal period.  "[I]f the regular lunch period is advanced or delayed for more than one hour for any of the reasons herein listed (a), (b), and (c), the employees involved shall be paid at the overtime rate for work performed in the regular lunch period and may eat their lunch on Company time." (Ledbetter Decl., Exh. 5 at p. 51.)  In other words, if PG&E does not provide a meal period within one hour of the regular meal period time, Plaintiff is

contractually entitled to be paid for *all* hours, even meal period time, *and* is entitled to an overtime rate for the hour or half-hour duration of his regular meal period, regardless of whether such time is "overtime" under external law.

The contractual rules are different if and when Plaintiff works as a "shift" employee, in which case he has no unpaid meal periods, *i.e.*, his meals are paid and on-duty, under Section 104.13 of the CBA: "Notwithstanding any of the foregoing provisions, shift employees and other employees whose workday consists of eight consecutive hours shall be permitted to eat their meals during work hours and shall not be allowed additional time therefore at Company expense." (Ledbetter Decl., Exh. 5 at p. 27.) Section 104.13, and employees covered by this provision, were at the center of the seminal case on the Labor Code Section 512(e) CBA meal break exemption, *Araquistain v. Pacific Gas & Electric Company*, 229 Cal. App. 4th 227, 230 (2014).[1]

As recognized in *Araquistain,* the plot is even thicker for GSRs, like Plaintiff, who are subject to a 2001 grievance settlement related to what exactly an on-duty (and paid) meal period looks like under Section 104.13. *See* 229 Cal. App 4th at 238, fn. 6 (quoting agreement between PG&E and Local 1245: "There is no such thing[] as a 'meal-on-the-fly' or a 'bun-on-the-run', and driving while eating is never appropriate. Committee members agreed that GSRs should eat when they can while they are on the job, preferably somewhere near the mid-point of their shift, and remain available. There is no scheduled 30-minute lunch period, nor is there an entitlement to 30 minutes to consume a meal each workday. A meal may take 15 minutes or 20 minutes to consume on any given occasion, but under no circumstance should an employee take more than 30 minutes to eat.") (*See also* Ledbetter Decl., Exh. 8 [copy of this 2001 agreement, the "GSR Disposition"].)

Other contractual meal period rights enjoyed by Plaintiff include company-provided meals *and pay* for the time taken to consume a meal, in a variety of circumstances when employees are required to report early or stay late. (Ledbetter Decl., Exh. 5 at pp. 25-27, 48; CBA Sections 104.2, 104.3, 104.4, 104.5, 104.6, 104.7, 104.8, 104.9, 104.10, 104.12, 201.3.)

---

[1] Section 104.13 also applies to consecutive-hour shifts of more than eight hours. *Araquistain*, 229 Cal. App. 4th at 230, fn. 3.

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT

10

CASE NO.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

**b.     Plaintiff's Contractual Meal Period Rights, As Applied To The Meal Break Allegations In The FAC**

In his First Amended Complaint, Plaintiff has thrust the following meal period allegations into the facts supporting his minimum wage cause of action:

> FAC, Paragraph 20: "Plaintiff and the putative class were required to respond to 'emergency' calls that interrupted their meal breaks, forcing them to return to work early. As a result, Plaintiff and the putative class were not compensated for the time spent working before their meal periods officially ended."
>
> FAC, Paragraph 21: "If Plaintiff and the putative class were unable to take their meal period or second meal period, management would instruct Plaintiff and the putative class to log that they took their meal periods, even if they did not receive one."

The Section 301 preemption question is whether these pleaded allegations, about meal breaks being interrupted due to emergencies, about employees being forced to return to work "early" from their meal breaks, about alleged management instructions to record meal breaks that did not occur, about when a meal period "officially end[s]", and about any allegedly uncompensated time that resulted (putting into question whether *any* meal period time was uncompensated in the first instances), can be litigated without interpreting the dense thicket of CBA language described above.  The answer is clearly "no."  Thus, these allegations are preempted.

Relevant questions, the answers to which require contract interpretation, include:

- Is Plaintiff a "shift" employee, such that his meal periods are on-duty and already paid under Section 104.13, and he has no contractual right to a meal period of any particular duration?

- If Plaintiff's regular meal period was interrupted by emergency, customer convenience, or a safety issue under Section 204.2(a), (b) or (c), was that meal period provided earlier or later, within one hour?

- Was Plaintiff's regular meal period interrupted and displaced by more than one hour due to emergency, customer convenience, or a safety issue, such that he was already paid *overtime* for his meal period?

- What does it mean when the CBA says that PG&E must provide a "comparable substitute" in situations "when employees are prevented from observing their usual and

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT — 11 — CASE NO.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

average meal practices"?

- Who makes the determination whether "work which must necessarily be performed on facilities serving a customer of Company can most conveniently be performed during such customer's lunch period"?

The undersigned does not attempt to answer these contract interpretation questions at this stage. It is sufficient to establish that these questions exist and they are inextricably related to resolving the allegations in Paragraphs 20 and 21 of the FAC. Again, Plaintiff's "right to meal periods exists solely as a result of his CBA." *Garcia,* 2024 WL 4209519, *1. When interpretation of contractual terms (like those detailed above) is required to evaluate the merits of a minimum wage claim, this is precisely where Section 301 preemption (Step Two) applies. *See Rodriguez, supra,* 2022 WL 161892, *5; *Giles, supra,* 2022 WL 3370793, *6; *Mellon, supra,* 625 F. Supp. 3d at 1014-16..

In *Mellon*, plaintiff advanced a minimum wage claim, based on alleged off-the-clock work prior to the start of the shift, namely, time spent going through security checks. 625 F. Supp. 3d at 1014-15. The CBA contained multiple provisions on the issue of pay for pre-shift "walking/changing time." *Id.* The defendant employer contended that, under the correct interpretation of the CBA language (which did not even mention security checks), plaintiff was already paid for pre-shift security check time and the court agreed that *if defendant's contract interpretation were correct*, "Mellon would have been appropriately compensated." *Id.* at 1015. Here, similarly, under PG&E's interpretation of the above-described (many) contract provisions related to meal breaks and compensation therefor, Plaintiff would have always been appropriately compensated. This is true regardless of whether: (i) his meal breaks were already fully paid and on-duty (under CBA Section 104.13 and the GSR Disposition); (ii) his meal breaks were shifted more than one hour forward or backward in the case of emergency or customer convenience, and thus the meal breaks were compensated at an overtime rate (under CBA Section 202.4, final sentence); (iii) his meal breaks were flexed less than one hour forward or backward, for any of the reasons contemplated in CBA Sections 202.4(a), (b) or (c); or (iv) plaintiff was provided a "comparable substitute" when he was "prevented from observing [his] usual and average meal practices or [was] prevented from eating a meal at approximately the usual time" (under CBA Section 104.1). Plaintiff may disagree with PG&E's

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT    12    CASE NO.

interpretation of the on-point CBA language, but such disagreement just proves the point: Step Two preemption applies.

Thus, the claims in Paragraphs 20 and 21 of the FAC should therefore be dismissed and must be brought, if at all, before a labor arbitrator. *See Mellon*, 625 F. Supp. 3d at 1017 (Section 301 "requires 'the specific performance of promises to arbitrate grievances in collective bargaining agreements'" ((*quoting Columbia Exp. Terminal, LLC v. I.L.W.U.*, 23 F.4th 836, 842 (9th Cir. 2022)).

### C.  Plaintiff's Third Cause Of Action (Expense Reimbursement) Is Preempted.

#### 1.  Pleaded Expense-Related Allegations

Plaintiff's factual allegations related to expense reimbursement are as follows: "Plaintiff and the putative class members were provided an allowance every year for flame-resistant clothing that Defendants required them to wear to work. Plaintiff and the putative class were required to maintain their own uniform to ensure they had the required uniforms available to them. The flame-resistant clothing had to be washed separately from other clothing." (FAC, Para. 31.)

While Plaintiff fails to allege what, if any, monetary outlay was required on his part, he does specifically allege that the reimbursement that was provided, the PG&E-provided allowance, was insufficient: "Plaintiff is informed and believes and thereupon alleges that the reimbursement paid by Defendants was insufficient to indemnify Plaintiff for all necessary expenses incurred in the discharge of their duties." (FAC, Para. 70; *accord* FAC, Paras. 62-63 (claiming that PG&E failed to pay a "weekly maintenance allowance" for alleged "employee uniforms").[2]

Previously, the Court held that Plaintiff's Section 2802 claim was not preempted, *based on the limited record* before the Court at that time. *Garcia,* 2024 WL 4209519, *1. Now, the record is different and shows that the CBAs, specifically Letter Agreement ("LA") 16-11-PGE and LA 23-19-PGE, have much to say on the specific subject of reimbursement for fire retardant clothing. (*See* Ledbetter Decl., Exhs. 6-7.) These letter agreements are collective bargaining agreements under the

---

[2] Plaintiff also includes a series of expense reimbursement related allegations within his Second Cause of Action (a wage claim). These allegations are in Paragraphs 60-63 of the FAC. None of these paragraphs of the FAC actually allege that Plaintiff spent any amount of time "maintaining" a PG&E uniform. These allegations clearly relate to the actual reimbursement of alleged expenses because they allege that PG&E failed to "pay them [Plaintiff and other employees] a weekly maintenance allowance" (FAC, Paras. 62 and 63) and that PG&E failed to maintain employees' uniforms (FAC, Paras. 61-62).

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA
94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT     13     CASE NO.

law, and for the purposes of a Section 301 analysis. *See Inlandboatmens Union of the Pacific v. Dutra Group dba Dutra Construction Co. Inc.*, 279 F.3d 1075, 1079 (9th Cir. 2002); *De'Sart v. PG&E*, 2018 WL 3545927, *1, fn. 4 (C.D. Cal. Jul. 18, 2018) (collecting cases).

### 2. Relevant CBA Provisions

First: "The intent of this agreement is to ensure employees are provided with funds to purchase all required fire retardant (FR) clothing." (Ledbetter Decl., Exh. 6.) The initial allowance, in year one for new employees, is $1,000 for "Full-time Users" of FR clothing, and $500 for "Part-Time users" of FR clothing.[3] (*Id.*, Exh. 7.) Thereafter, once an employee has a preexisting supply of FR clothing, the annual allowance is $750 for "Full-Time Users" and $500 for "Part-Time Users."[4] (*Id.*) "Infrequent users" only receive one FR garment, "a coverall." (*Id.*, Exh. 6.)

Second, any out-of-pocket FR clothing expenditures, *i.e.*, expenditures made over and over the allowance are optional, based on an employee's wishes: "Employees wishing to purchase more than their allowance will be responsible for the difference." (*Id.*) If an employee needs more FR clothing than the amount that can be purchased with the negotiated allowance, there is a detailed and collectively bargained process for that situation, as follows:

> If an employee's allotment is such that they do not have enough funds to purchase the FR Clothing that they need to work safely, or an employee otherwise has an issue with obtaining adequate FR Clothing, the employee should first address it with his/her supervisor. If the supervisor is unable to resolve the issue, the employee should e-mail the designated representatives of the Company and Union consisting of a two-person committee, including the IBEW Assistant Business Manager for Safety and a representative from the PG&E Corporate Safety Department.

(*Id.*)

Third, PG&E pays for repair or replacement of any FR clothing damaged while an employee is working. "Replacement/Repair - Clothing damaged on the job will be replaced or repaired and will not be charged to the employee's allowance." (*Id.*)

Fourth, PG&E and IBEW Local 1245 explicitly addressed the subject of laundering *without*

---

[3] Prior to 2023, this "initial allowance" was $750 for full-time users and $500 for part-time users. (Ledbetter Decl., Exh. 5.)
[4] Prior to 2023, the annual allowance (following the year one initial allowance) was $500 for full-time users and $250 for part-time users. (Ledbetter Decl., Exh. 5.)

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT   14   CASE NO.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

requiring employees to wash FR clothing separately from other clothing: "Laundering – All garments are to be laundered by the employee." (*Id.*)  Any decision by PG&E to deviate from the agreement(s) and require employees to wash FR clothing separately could not be made unilaterally, and would require negotiating with IBEW Local 1245, because work rules are a mandatory subject of bargaining. *See Praxair, Inc.*, 317 NLRB 435, 436 (1995); *Womac Industries*, 238 NLRB 43, 49 (1978); *Murphy Diesel Co.*, 184 NLRB 757, 762 (1970), *enf'd.*, 454 F.2d 303 (7th Cir. 1971).

Fifth, whether an employee is a covered "full-time user," "part-time user," or "infrequent user" – and thus covered by the FR clothing letter agreements – is also addressed in a collectively bargained manner: "The joint Company-Union Working Committee on FR Clothing will remain in effect to review the program, verify covered employees and to recommend changes to the program."

### 3. Plaintiff's Section 2802 Claim Is Preempted

As this Court previously recognized, Step Two of the *Burnside* analysis applies to Section 301 preemption arguments directed at pleaded Labor Code Section 2802 claims.  *Garcia*, 2024 WL 4209519, *1.  The question under Step Two is whether there is CBA language that must be interpreted to adjudicate Plaintiff's Section 2802 claim.  *Id.* The answer to this question depends on how closely and directly CBA language addresses the pleaded expense reimbursement theory.  *See Rodriguez, supra,* 2022 WL 161892, *4-5, *Linebarger v. Graphic Packaging Int'l, LLC*, 2020 WL 1934958, *6 (C.D. Cal. Apr. 22, 2020), and *Gay v. Pac Steel Group,* 2023 U.S. Dist. LEXIS 164851, *20 (N.D. Cal. Sep. 15, 2023).

In *Linebarger*, the plaintiff claimed unreimbursed expenses for tools and cell phone use and the CBA contained specific language providing a *monetary allowance* for employees to purchase tools. 2020 WL 1934958, *6. Although the CBA apparently did not mention "cell phones" explicitly, the court held that Section 301 preemption applied because "cell phone expenses could be considered necessary maintenance tools under the CBA" – thus, CBA interpretation was required. *Id.*

In *Rodriguez*, the plaintiff claimed unreimbursed expenses for tools and cell phone use and the CBA included specific language regarding tools. *See* 2022 WL 161892, *2, 5 (CBA provided that employees must "furnish for their own use all necessary hand tools to enable them to effectively install all work," and the employer will replace "tools broken on the job such as drills, taps, hacksaw blades,

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT

15

CASE NO.

etc."). In *Rodriguez*, Magistrate Judge Beeler joined *Linebarger* in holding that these Section 2802 tool/cell phone reimbursement claims were preempted by Section 301 because of the on-point language in the CBA. *Id. Accord Gay*, 2023 U.S. Dist. LEXIS 164851, *20 (Section 2802 claim for commute time expenses preempted by Section 301 because of the need to interpret relevant industry-specific CBA terms relevant to travel).

Under this standard, Plaintiff's expense reimbursement claims are preempted. Through the two letter agreements explored in detail above, the CBA extensively and exhaustively addresses every aspect of FR clothing and reimbursement (including, but not limited to, the aspects addressed in the FAC).

For example, given that Plaintiff fails to allege any monetary outlay, a fundamental pleaded allegation is that "[t]he flame-resistant clothing had to be washed separately from other clothing." (FAC, Para. 31.) This runs directly contrary to what PG&E submits is the only logical interpretation of the language that PG&E and IBEW Local 1245 negotiated on the subject: employees are *not* required to wash FR clothing separately. LA 16-11-PGE simply provides: "Laundering – All garments are to be laundered by the employee." If employees had additional obligations, such as to wash fire retardant clothing separately, that additional obligation would have to be negotiated. But regardless of whose interpretation of the relevant language from LA 16-11-PGE is correct, it is clear that the CBA must be interpreted to resolve Plaintiff's pleaded claim that "[t]he flame-resistant clothing had to be washed separately from other clothing."

Plaintiff also appears to be claiming, in Paragraph 70 of the FAC, that the monetary allowance was insufficient in amount. Whether this is true requires interpretation and application of a range of CBA language on this very subject (whether the monetary allowance is sufficient to meet the joint labor-management intent to cover *all* FR clothing expenditures): "The intent of this agreement is to ensure employees are provided with funds to purchase *all* required fire retardant (FR) clothing." (Ledbetter Decl., Exh. 5 [emphasis added].) *See, e.g., Linebarger*, 2020 WL 1934958, *6 (Section 301 preemption applied to Section 2802 claim for tool reimbursement where CBA provided monetary allowance to employees for the purchase of certain tools). Moreover, it is clear that the CBA contemplates resolving such disputes, as to whether the amount of the allowance is sufficient, through

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT    16    CASE NO.

1  a negotiated dispute resolution process. (Ledbetter Decl., Exh. 5 [IBEW Assistant Business Manager
2  for Safety and PG&E Corporate Safety Department to resolve escalated disputes about whether work
3  requires more FR clothing than annual allowance affords].)

4  At bottom, the Section 301 preemption argument here, comparing the pleaded allegations
5  versus the on-point CBA language, is far stronger than in *Rodriguez*, *Linebarger* or *Gay*. Plaintiff's
6  Third Cause of Action is preempted.

7  **D.    Plaintiff's Second Cause Of Action (Hourly Wages) Is Preempted.**

8  Previously, this Court held that a minimum wage claim cannot be waived and, for that reason,
9  a waiver-based Section 301 preemption argument will not stand in relation to Plaintiff's minimum
10 wage claim. *Garcia,* 2024 WL 4209519, *1. PG&E does not challenge this holding and expressly
11 disavows any argument that Plaintiff's minimum wage rights have been waived by the CBA. PG&E's
12 Section 301 preemption argument in this section, immediately below, is not based on any waiver.
13 Rather, PG&E's Section 301 preemption argument is that Plaintiff's Second Cause of Action is built
14 entirely upon: (i) preempted meal break allegations; (ii) preempted expense reimbursement
15 allegations; and (iii) pre-shift off-the-clock minimum wage allegations that are preempted under
16 *Burnside* Step Two.

17 First, the discussion in Section II(B) above establishes that Plaintiff's Second Cause of Action
18 is, in part, based on preempted meal period allegations.

19 Second, Plaintiff's expense reimbursement claims are preempted for the reasons set forth in
20 Section II(C) above. Plaintiff claims that the Division of Labor Standards Enforcement would believe
21 that PG&E owes an hour of pay per week for "weekly maintenance" of a uniform. (FAC, Para. 61.)
22 In the same section of his Second Cause of Action, Plaintiff claims that PG&E does not maintain
23 "uniforms" (presumably made of fire retardant clothing, because nothing else approximating a
24 "uniform" is alleged in the FAC) and that PG&E does not "pay ... a weekly maintenance allowance."
25 (FAC, Paras. 61-63.) PG&E's contention is that it *does* maintain employee's fire retardant clothing,
26 both by providing an ample (and flexible) monetary allowance and under the following key provision
27 of the collective bargaining agreement, LA 16-11-PGE, that governs this subject matter:
28 "Replacement/Repair - Clothing damaged on the job will be replaced or repaired and will not be

LITTLER
MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA
94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF
CIVIL CASE TO FEDERAL COURT

17

CASE NO.

charged to the employee's allowance." (Ledbetter Decl., Exh. 6.) In sum, adjudicating Paragraphs 60-63 within the Second Cause of Action requires interpretation of the CBA and these claims are thus preempted.

Third, the pre-shift off-the-clock minimum wage allegations, stemming from the allegations in Paragraph 18 of the FAC, are preempted under *Burnside* Step Two. In *Giles*, Judge Chesney held that pleaded minimum wage claims for "perform[ing] duties while on [his] meal break," undergoing "mandatory drug testing or ... other testing," and "submit[ting] to mandatory screening questions prior to ... clocking in[ ]" were preempted under Step Two because the CBA contained terms regarding "actual time worked" and regarding pay for work performed before the regular shift ("show-up pay"). 2022 WL 3370793 at *6. Similarly, in *Rodriguez*, Magistrate Judge Beeler held where plaintiff alleged "defendant failed to pay minimum wages for off-the-clock activity," resolution of minimum wage claim required, "[a]t a minimum, ... interpretation of CBA terms such as 'actual hours worked' and 'show up expenses'"). 2022 WL 161892 at *5. *Accord Mellon, supra,* 625 F. Supp. 3d at 1015-16 (minimum wage claim not waivable through a CBA, but may still be preempted under Step Two if interpretation of CBA language required to adjudicate claim).

Here, as in *Giles* and *Rodriguez*, both Northern District of California decisions applying Step Two preemption principles to a minimum wage claim, the CBA contains multiple provisions that require an analysis of when "actual work" starts and/or when and how additional compensation should be provided when employee start work before the time at which they normally begin to be paid (akin to the "show-up" pay element in *Giles* and *Rodriguez*).

For example, CBA Section 208.12 requires that when, at the request of a supervisor an employee reports to work "on workdays outside of his/her regular work hours, the employee shall be paid overtime compensation for actual work time[.]" Section 208.12 uses "actual work time" repeatedly as the trigger for this special contract-provided overtime benefit. Section 208.13 of the CBA provides that overtime for continuing to work beyond regular work hours is "only for actual work time up to regular work hours[.]" Section 110.4 of the CBA restricts the payment of shift premiums as "only for hours actually worked[.]"

Section 208.1 of the CBA expressly defines contractual "overtime" to include "time worked

LITTLER
MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA
94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT

18

CASE NO.

outside of regular work hours on a workday," without regard to the number of hours worked on that day: CBA Section 208.2 applies time-and-a-half and double-time thresholds based on the total "time worked" in a day.

All of these provisions require an analysis of when "actual work" begins under the CBA, just as in *Rodriguez* and *Giles*.

As further examples, the CBA, at Section 104.6, provides that, if PG&E requires an employee to work outside of regular work hours, the employee gets a paid half-hour meal period between four and five hours after the start of that outside-of-normal-hours work: "If Company requires an employee to perform prearranged work wholly outside of regular work hours on either workdays or non-workdays such employee shall be permitted to have time off for a meal approximately four hours but not more than five hours after the employee starts work, such meal to be furnished by the employee at the employee's own expense. The time necessarily taken for any such meal up to one-half hour shall be at Company expense." Section 104.3 is a similar provision applicable to emergency work starting two or more hours before regular work hours. Section 104.8 is a similar provision applicable to "prearranged work starting two hours or more before regular work hours[.]"

Under Section 110.2(a) of the CBA, whether a shift premium (a differential) applies depends on the exact time at which an employee "reports for work" and whether that specific work-start time is "contiguous with" regular work hours: "An employee will be paid the shift premium, if any, in effect for the shift in progress at the time such employee reports for work (exclusive of travel time) when work is performed on a regular workday where such work is not contiguous with regular work hours."

Again, all of these provisions require an interpretation of when work begins under the CBA, which is pivotal to adjudicating the pre-shift off-the-clock claim in this case, just as in *Rodriguez* and *Giles*.

## VI.   CONCLUSION

Removal is proper under Section 301, for all of the above reasons. This second removal is proper because specific newly pleaded allegations in the FAC are preempted by Section 301. This Court has jurisdiction over all of the claims, discussed above, that are preempted by Section 301. PG&E will promptly move for judgment on the pleadings, under Federal Rule of Civil Procedure

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT

19

CASE NO.

12(c), on the basis of these preemption arguments. *See Giles, supra,* 2022 WL 3370793, *2 (ruling on Section 301 preemption arguments on motion for judgment on the pleading under Rule 12(c)).

Dated: October 25, 2024

                                              LITTLER MENDELSON, P.C.

                                              */s/ Harman S. Deol*
                                              JOSHUA D. KIENITZ
                                              DOUGLAS L. ROPEL
                                              HARMAN S. DEOL
                                              Attorneys for Defendant
                                              PACIFIC GAS & ELECTRIC COMPANY

4894-4414-4114.1 / 101443-1155

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL CASE TO FEDERAL COURT     20     CASE NO.